**STATE of Missouri, Respondent,**

v.

**Daniel M. HUBBLE, Appellant.**

No. 26241.

Missouri Court of Appeals,
Kansas City District.

April 2, 1973.

Motion for Rehearing and/or Transfer
Denied May 7, 1973.

William E. Mounts, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Vincent F. Igoe, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

PER CURIAM.

Appellant, hereinafter called "defendant", appeals from his conviction of selling a quantity of amphetamine sulfate, a drug listed by the Missouri Division of Health to be a stimulant, with imposition of sentence suspended by the trial court and defendant placed on probation for two years.

Defendant asks this court to reverse his conviction because (1) he was denied his Sixth Amendment right of confrontation in that the trial court refused to compel the state to disclose the identity of an informer, (2) the state failed to prove that the Missouri Division of Health had not excepted amphetamine sulfate from the application of Section 195.017 RSMo Supp.1971, V.A.M.S., and (3) the giving of Instruction No. 8 (alibi) wrongfully shifted to defendant the burden of proving that defendant was not present at the time and place of the offense charged.

It is necessary to outline certain facts in order to place the first point raised by defendant in proper perspective for disposition. Outside the presence of the jury, and immediately prior to the introduction of evidence, counsel for defendant advised the trial court that the police file disclosed an informer. Counsel then asked the state if it intended to call the informer as a witness, to which counsel for the state replied in the negative. Counsel for the state further advised the trial court that the informer was "still working" for the Kansas City Police Department and federal narcotic agents and disclosure of the identity of the informer would endanger his welfare. Counsel for the defendant advanced as the only reason for disclosure of the identity of the informer that "the reliability of the informer must be established." The trial court, at this point, refused to compel disclosure of the informer's identity, but did not preclude later identification of the in-

former if during the course of the trial such was properly indicated.

The state did not call the informer as a witness at the trial. Michael Bedord and Marilyn Stovall, officers of the police department working as undercover agents investigating drug traffic were the state's principal witnesses. At approximately 9:30 p. m. on the evening of August 14, 1971, Bedord and Stovall, working as a team, went to Loose Park in Kansas City, Missouri. They found numerous individuals dealing in what they suspected to be illicit drugs and narcotics. It would not appear unfair, on the basis of the record, to characterize suspected drug traffic as being rampant in Loose Park on the night in question. After the officers arrived, they were contacted by an informer at approximately 10:30 p. m. Defendant elicited on cross-examination that the informer advised the officers that "somebody was ready to make a sale". The officers followed the informer over to a retaining wall, near a lagoon, where a person, positively identified in court during the trial by the officers as the defendant, was kneeling on the retaining wall, with a small box in his possession, which contained a number of white tablets. The informer introduced the officers to the person, later positively identified by the officers in court as the defendant. According to the officers, defendant asked officer Bedord if he wanted "to buy some speed". Bedord asked him how much, and defendant replied a dollar a "hit". Bedord gave defendant ten dollars and in return defendant gave five white tablets to Bedord and four white tablets to Stovall. The informer was present during the sale. At the time of the sale it was dark. However, there were recessed lights in the retaining wall, which somewhat illuminated the area where the sale occurred. Bedord described the attire of the party making the sale as being a white T-shirt and blue jeans. Stovall described the attire as being a jacket, white T-shirt and blue jeans. Bedord estimated the total time consumed by the actual sale as being ten to fifteen seconds. Stovall estimated the total elapsed time as being three minutes. Physical proximity between Bedord and the party making the sale during the actual transaction was described by Bedord as being between one and one-half to two feet. Stovall described the distance between herself and the party making the sale as being about "an arm's length" when she received the four white pills. Bedord estimated that there were approximately one hundred and fifty people in all of Loose Park the night in question. Stovall estimated that there were approximately twenty-five or thirty people sitting on the wall around the lagoon.

The nine white tablets were turned over to the laboratory unit of the Kansas City Police Department where they were analyzed as amphetamine sulfate, a stimulant, the sale of which was prohibited by Section 195.240 RSMo 1969, V.A.M.S.

Counsel for defendant also elicited from the cross-examination of Bedord that before or after the sale was consummated, but not during the transaction, the informer mentioned that the party making the sale was Daniel M. Hubble, the defendant.

A day or two following August 14, 1971, Bedord and Stovall separately went to the Kansas City Police Department to determine whether there was a "mug shot" on file under the name of Daniel M. Hubble. It turned out that there was. The true posture of all the testimony of both Bedord and Stovall concerning the informer giving the name Daniel M. Hubble and their conduct thereafter in locating a "mug shot" with the name Daniel M. Hubble thereon, was that the mug shot was utilized by the officers to verify the name of Daniel M. Hubble, and not for the purpose of their positive in-court physical identification of defendant, as the person who sold them the prohibited drug on the night of August 14, 1971.

The party making the sale was not arrested at the scene. Bedord testified that

the reason for not doing so was to protect the identity of the informer and the identity of himself and officer Stovall.

Counsel for defendant, during the cross-examination of officer Bedord, again asked the name of the informer. The state objected and the trial court sustained the objection. Counsel for defendant made no record of any kind as to why the defendant was entitled to or wanted to know the identity of the informer. Defendant thereafter did not press the matter of informer's identity.

Throughout the trial defendant maintained that he was not in Loose Park on the night in question, and had not sold any prohibited drugs. However, defendant was unable to otherwise account for his whereabouts the night in question. Defendant denied he owned any white T-shirts or blue jeans and introduced evidence of his good character.

█ Defendant's contention that he was unconstitutionally deprived of the right to confront a witness against him, by virtue of the trial court's refusal to compel the state to reveal the identity of the informer, is not well taken, particularly, since the state did not call the informer as a witness. In Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, a somewhat analogous assignment was made by the accused because the state did not produce an informer to testify against him. The argument was quite tersely disposed of by the Supreme Court at page 62, n. 2, 87 S.Ct. at page 791, saying, "This contention we consider absolutely devoid of merit." Accordingly, no Sixth Amendment violation is present in this case.

█ The true issue is whether public policy requires preservation of the anonymity of the informer, or, whether "fundamental requirements of fairness" compel disclosure as measured by the specific circumstances of this particular case. Determination of when the testimonial privilege of non-disclosure of an informer's identity,

which is predicated upon sound public policy of encouraging citizens to communicate their knowledge of criminal activities to law enforcement officers, must give way to stripping informers of their anonymity because of "fundamental requirements of fairness" is not always susceptible of an easy determination. All the circumstances in a particular case must be weighed and evaluated. The somewhat elusive principle of "fundamental requirements of fairness" is not measured by any fixed rule, but involves careful consideration, basically, of whether disclosure of an informer's identity is relevant and helpful to the accused's defense, or is essential to a fair determination of the cause. As a practical matter, and rightfully so, determination thereof rests within the sound discretion of the trial court. No fixed rule regarding disclosure can be made which could properly balance public policy on the one hand and "fundamental requirements of fairness" on the other, in view of the divergency of facts and circumstances which necessarily exists in different cases. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957), State v. Edwards, 317 S.W.2d 441 (Mo. banc 1958), State v. Yates, 442 S.W.2d 21 (Mo.1969).

█ The only reason given by defendant's counsel for disclosure of informant's identity was "the reliability of the informer must be shown."

Bear in mind, the informer did not testify; bear in mind further, the burden, resting upon the state as to all issues for submissibility, was met by testimony of witnesses other than the informer. It is of paramount importance that counsel for defendant at no time, directly or by innuendo, advised the trial court that disclosure of the informant's identity would constitute a means of throwing doubt on the defendant's identity as the person who committed the crime charged. Officers Bedord and Stovall, based on their personal observations of defendant in Loose Park on the night in question, both made positive physical identification of defendant in court

during the trial. As a corollary, it follows, the informant's reliability was not at issue.

Having placed all the facts in what is believed to be their proper perspective, the trial court exercised proper discretion in not compelling disclosure of the informant's identity. State v. Redding, 357 S. W.2d 103 (Mo.1962). "Fundamental requirements of fairness" applied to the specific facts in this particular case do not require reaching out so far as to strip the informer of his anonymity. To hold otherwise would do violence to the sound public policy from which the testimonial privilege rises.

 Without citing any authorities and absent any compelling supporting reasons, defendant next asserts the burden of proof was on the state to show that the compound in question had not been excepted by the Missouri Division of Health under the provisions of paragraph 6(6), Section 195.017 RSMo Supp.1971, V.A.M.S. Defendant made no objection to state's Exhibit No. 1 (a list of controlled substances promulgated by the Missouri Division of Health under authority of Section 195.230 RSMo 1969, V.A.M.S.) wherein amphetamine sulfate was listed by the Missouri Division of Health as a controlled substance. Section 195.180 RSMo 1969, V.A.M.S., expressly relieves the state of negating any "exception, excuse, proviso, or exemption, contained in this law," and places the burden of proof on defendant to establish the asserted exception. Defendant's assertion of error that the burden of proof rested on the state to negate the exception is ruled against him.

Lastly, defendant complains of Instruction No. 8, which submitted the defense of alibi. From a standpoint of practical and legal import, Instruction No. 8 may be fairly characterized as identical to Instruction No. 4 in State v. Mooring, 445 S.W.2d 303 (Mo.1969), which was approved after careful analysis of essentially the same objections voiced by defendant against Instruction No. 8 in this case,

namely, that it incorrectly shifted to defendant the burden of proving his presence at the scene and denied him the full effect of the presumption of innocence. Instruction No. 8 correctly stated the defense of alibi and is not subject to the claims of error charged by defendant.

No error appearing, the judgment is affirmed.

All concur.