889 P.2d 16

Sean Michael MALONE, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Robert A. Hertzberg, a judge thereof, Respondent Judge,

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.

No. 1 CA–SA 94–0004.

Court of Appeals of Arizona, Division 1, Department D.

May 19, 1994.

Review Denied Feb. 22, 1995.

Nicholas S. Hentoff, Phoenix, for petitioner.

Richard M. Romley, Maricopa County Atty. by Diane E.W. Gunnels, Deputy County Atty., Phoenix, for real party in interest.

## OPINION

**McGREGOR, Judge.**

Petitioner Sean Michael Malone (Malone) is in the custody of the Maricopa County Sheriff's Office, charged with one count of conspiracy to commit murder, a class one felony, and one count of first degree murder, a class one felony. Malone originally was charged as a juvenile, but was transferred to Superior Court for adult prosecution. Pursuant to Rule 14(e) of the Arizona Rules of Procedure for the Juvenile Court, the juvenile court judge orally set bond "in the amount of $100,000 plus $40,000 in surcharges." The $40,000 represents the assessment imposed by former Arizona Revised Statutes Annotated ("A.R.S.") section 41–2403.A.[1] Malone moved to reduce bond. The court held a hearing and denied the motion. Malone then filed this petition for special action, asserting that the trial court abused its discretion in denying his motion to reduce the bond.

Malone contends that the juvenile court judge determined that a reasonable bail amount was $100,000 and then imposed an additional $40,000 surcharge. Malone argues that the court must reduce the bail amount by $40,000 because, in his view, the surcharge is excessive bail in violation of the Eighth Amendment to the United States Constitution and article 2, sections 15[2] and 22[3] of the Arizona Constitution. We accept jurisdiction because no other adequate remedy is available to consider the condition of Malone's pre-trial detention and because this case raises an issue of statewide importance.

Former A.R.S. section 41–2403.A provided for the imposition of a forty percent surcharge on any fine, penalty, or forfeiture the courts imposed and collected for criminal offenses. A.R.S. section 41–2403.B provided that "[i]f any deposit of bail or bond ... is to be made for a violation, the court shall require a sufficient amount to include the assessment prescribed in this section[.]"

Bail set at a figure higher than an amount reasonably calculated to assure the presence of an accused to stand trial is excessive under the Eighth Amendment. *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). "Bail is exacted for the sole purpose of securing the attendance of the defendant in court at all times when his presence may be lawfully required ... and any bail fixed at more than is necessary to secure that appearance is excessive within the meaning of the [Arizona] constitution[.]" *Gusick v. Boies*, 72 Ariz. 233, 236, 233 P.2d 446, 448 (1951) (citations omitted).

As applied to the surcharge under A.R.S. section 41–2403, *Stack* and *Gusick* require that the amount of bail must be the same regardless of any assessment that is included in the bail amount. The assessment must be part of that amount of bail sufficient to secure the attendance of the defendant in court. Adding the assessment to a sufficient bail amount and then calling the conjoint sum "reasonable bail" violates the constitution. Thus, if the juvenile court judge first set reasonable bail at $100,000 and then added the forty percent surcharge, the bail must be reduced. On the other hand, if the judge initially set bail at $140,000, including surcharges, no constitutional violation occurred.

The State, in fact, concedes that if the $40,000 assessment were a sum added to the bail bond amount, it would be unconstitutional. The State contends, however, that under former A.R.S. section 41–2403.B, the amount of reasonable bail is to *include* the amount of the surcharge.

The State supports its argument by noting the evolution of language in the precursor

---

1. A.R.S. section 41–2403 was repealed effective January 1, 1994. As of January 1, 1994, the bail bond forfeiture provisions are found in A.R.S. sections 12–116.01 and 12–116.02. The new provisions are largely similar to the former provisions and our analysis would be much the same under either set of provisions.

2. Article 2, section 15 of the Arizona Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

3. Article 2, section 22 of the Arizona Constitution provides that "[a]ll persons charged with crime shall be bailable by sufficient sureties" except for certain capital offenses and certain felonies not relevant to the present case.

statutes to A.R.S. section 41–2403.B. The surcharge system has been in effect in Arizona since 1968. The first law establishing the surcharge provided: "When any deposit of bail is made for an offense to which this chapter applies, the person making such deposit *shall also deposit* a sufficient amount to include the assessment prescribed in this chapter for forfeited bail." Laws 1968, Chapter 209 (former A.R.S. § 41–1726.B) (emphasis added). This language suggested that the assessment was to be added to the reasonable bail amount. The 1983 version of the statute provided, "If any deposit of bail or bond ... is to be made for a violation, the court shall require *a sufficient amount to include the assessment* prescribed in this section for forfeited bail or bond[.]" A.R.S. § 41–2403.B (emphasis added). This statute was still in effect in 1993.

The State contends that, although the judge imposing the bail amount may loosely refer to "bail plus surcharges," the language of former A.R.S. section 41–2403.B shows that the entire amount imposed is in fact bail, intended to assure the accused's presence in court. The State also asserts that the forty percent assessment merely earmarks that portion of the bail bond that goes to the criminal justice enhancement fund upon penalty of forfeiture if the defendant fails to appear in court.

Although the statute is not a model of clarity, we do not find it unconstitutional as written. The obvious intent of the statute is to allocate as a surcharge a certain percentage of the amount the court determines to be reasonable bail. This percentage, when bail is forfeited, goes to the criminal justice enhancement fund. We therefore agree with the State that the constitution does not restrict the use of penalty amounts within the bail amount and that the state properly may use the surcharge fee for any legitimate state purpose. The issue in this case, however, is whether the juvenile court judge added the surcharge onto bail, resulting in excessive bail in violation of the United States and Arizona Constitutions.

■ In this special action, petitioner has provided us a very limited record. We have no transcript of the hearing at which the juvenile court judge initially set bail and therefore no record of the recommendations made as to reasonable bail. We have no copy of petitioner's motion to reduce the amount of bail and therefore no knowledge of the arguments petitioner presented to justify his request. We have no transcript of the hearing on petitioner's motion to reduce the amount of the bond and therefore no knowledge of the factors the respondent judge used in deciding not to reduce bail from $140,000. The judge's initial order could be interpreted as reflecting the judge's conclusion that $140,000 constituted a reasonable bail. If that was the judge's conclusion, he violated no federal or state constitutional principle.

Petitioner had an opportunity to convince the respondent judge, at the hearing on his motion to reduce bail, that $140,000 was not a reasonable amount because the juvenile judge improperly increased it by the surcharge amount. We do not know whether petitioner made that argument; we know only that the respondent judge decided not to reduce the bond set by the juvenile court judge.

"Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990). We therefore do not presume that the juvenile court judge acted contrary to the federal and state constitutions and failed to properly apply A.R.S. section 41–2403.B, particularly when we cannot review the testimony presented and arguments made at the hearing on the motion to reduce bond. On this limited record, we cannot say that $100,000 constitutes reasonable bail in an amount sufficient to guarantee petitioner's appearance. Nevertheless, given the limited record, we also cannot say with certainty that $140,000 was reasonable bail and that no constitutional violation occurred. We therefore remand to permit the trial court to determine whether the judge regards $140,000 as reasonable bail, independent of the surcharge.

CLABORNE, J., concurs.

GERBER, Judge, concurring in part; dissenting in part,

I agree for the most part with the majority's analysis of the constitutionality of adding a surcharge to bail. I disagree with their conclusion, however, that we do not have a sufficient record upon which relief could be granted. Because I would grant the relief Malone seeks, I dissent in part.

Although the statute can be defended against unconstitutionality, its procedure for computing bail by including a surcharge within reasonable bail is troublesome and awkward. Instead of requiring that 40% of forfeited bail goes to the criminal justice enhancement fund, the statute apparently requires judges to pick an amount such that *this amount* plus *40% of this amount* equals *a sufficient reasonable bail*. The portion of the surcharge included in any bail under former A.R.S. section 41–2403 is $\frac{2}{7}$ (two-sevenths) of the total bail.[4] When any court sets bail under section 41–2403, any of the following is possible: 1) the court sets a reasonable bail amount and adds the assessment, 2) the court determines bail and then computes what amount of the bail figure is the assessment, or 3) the court simply sets a reasonable bail which includes the surcharge within it.

The first possibility is unconstitutional and inconsistent with the intent of the statute. Any surcharge added to the sufficient amount of bail results in excessive bail.

The second possibility is constitutional but can be awkward. While I do not question the mathematical abilities of the Arizona judiciary, or alternatively, the availability of calculators on the bench, if one adopts the statute's logic, the courts must determine some amount of money such that 140% of that amount totals the amount of reasonable bail.[5][6]

The third possibility is both constitutional and requires no mathematics on the part of the court. Under this approach the court simply sets bail without figuring surcharges or assessments. Later, if the bail is forfeited, the amount that goes to the criminal enhancement fund can be determined.[7] This practice would avoid ambiguity about whether the court added or included the surcharge into the bail amount.

4. Under the new bail forfeiture provisions of A.R.S. §§ 12–116.01 and 12–116.02, the assessment percentages are now 46% and 11% respectively. Assuming the assessments are both included in bail, 46/157 (forty-six one hundred fifty-sevenths) goes to the criminal justice enhancement fund under § 12–116.01 and 11/157 (eleven one hundred fifty-sevenths) goes to the medical services enhancement fund under § 12–116.02.

5. Consider the following table:

| Bail | Amount "X" so that: X plus (40% of X) = bail | (40% of X) = the assessment |
|---|---|---|
| $ 500 | $ 357.14 | $ 142.86 |
| 1000 | 714.29 | 285.71 |
| 5000 | 3571.43 | 1428.57 |
| 10000 | 7142.86 | 2857.14 |
| 50000 | 35714.29 | 14285.71 |
| 100000 | 71428.57 | 28571.43 |
| 140000 | 100000.00 | 40000.00 |

6. A.R.S. §§ 12–116.01 and 12–116.02 which contain the bail bond forfeiture provisions effective January 1, 1994, have each added a section (C) which reads, "[A]fter *addition* of the penalty assessment, the courts may round the total amount due to the nearest one-quarter dollar." (Emphasis added). While this statute is not relevant to this appeal and we do not address the constitutionality of this provision, the statutes' use of the word "addition" seems consistent with our second possibility of how judges are to apply the statute, or, alternatively, inconsistent with the language in section (B) of those statutes that the assessment is to be *included* within the amount of reasonable bail.

7. One remedy to the mathematical awkwardness of the statute is the following: 1) The court simply sets a reasonable bail amount. 2) If the criminal defendant fails to appear, $\frac{2}{7}$ (two-sevenths) of that bail amount is granted to the criminal justice enhancement fund. This way, the intent of the statute would be upheld without the impression that the surcharge was added as excessive bail.

As to Malone's bail in the present case, if the amount necessary to secure his presence in court was $140,000, that assessment would be constitutional. If that amount was $100,000 plus a $40,000 surcharge, however, that surcharge would be unconstitutional because it would constitute excessive bail. Whether the assessment is included in or added to bail is the difference between whether a court's application of section 41–2403 is constitutional or unconstitutional.

While the juvenile judge's oral pronouncement can be interpreted two ways, the more obvious interpretation is that his language first sets "bond" and then adds to that amount ("plus") a 40% surcharge. I conclude that this reading is more plausible than that the trial court determined that a reasonable bail amount was $140,000. Accordingly, the trial judge's language "bond is set in the amount of $100,000 plus $40,000 in surcharges" constitutes an unconstitutional application of a surcharge onto a reasonable bail. I would reduce Malone's bail to $100,000, the maximum constitutionally allowed.